IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 08-00064-01-CR-W-SOW |
| CLINTON J. EDMONSON, | ) ) | |
| Defendant. | ) ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Edmonson's Motion to Suppress Evidence (doc #21). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On March 4, 2008, the Grand Jury returned a one count indictment against defendant Clinton J. Edmonson. The indictment charges that on February 2, 2008, defendant Edmonson, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm.

On August 14, 2008, an evidentiary hearing was held on defendant's motion to suppress. Defendant Edmonson was represented by Assistant Federal Public Defender William J. Raymond. The Government was represented by Assistant United States Attorney Bruce Clark. The Government called Officer Chris Summers of the Independence, Missouri Police Department as a witness. The defense called Detective John Howe of the Independence, Missouri Police Department to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. Officer Chris Summers is assigned to the Special Response Team of the Independence Police Department. (Tr. at 3) On February 2, 2008, Officer Summers and his squad were assisting the Independence Intelligence Unit on a sex crimes case that they were investigating. (Tr. at 3) Officer Summers and his unit were being

utilized as an arrest or take-down vehicle. (Tr. at 4) At approximately 4:40 p.m., Detective John Howe contacted Officer Summers and advised that a white van had pulled into a gas station at 39th Street and Crackerneck and that the white male occupying the van had been sitting there for approximately fifteen minutes and appeared to be visually scanning the parking lot as it he were looking for someone or something. (Tr. at 4, 12) Detective Howe testified that there had been several armed robberies at this location. (Tr. at 43) Detective Howe also received information from an officer inside the gas station that when the white male entered the store, he appeared to be either casing the business or waiting on someone as he was walking around without purpose and looking at things like he was stalling for time. (Tr. at 42) At approximately 5:00 p.m., Detective Howe again contacted Officer Summers and requested that Officer Summers respond to 39th Street and Crackerneck and contact the subject in the vehicle regarding his suspicious behavior. (Tr. at 4, 15-16)

2. Officer Summers responded to the location and as he arrived, he observed the white van pulling out of the gas station parking lot onto the public street. (Tr. at 4-5) Officer Summers testified that per city ordinance in Independence, Missouri, license plates are required to be attached to the front and rear bumpers.[1] (Tr. at 6-7) Officer Summers testified that the van did not display a front Missouri license plate.[2] (Tr. at 5) Detective Howe testified that Officer Summers advised on the radio that there was no front license plate and that he was stopping the vehicle based on that. (Tr. at 46) Officer Summers conducted a traffic stop just north of 39th Street and Crackerneck. (Tr. at 5)

3. After he stopped the vehicle, Officer Summers made contact with the driver of the vehicle, defendant Edmonson. (Tr. at 7) Edmonson provided Officer Summers with a Missouri driver's license. (Tr. at 7) Officer Summers testified that Detective Howe was in the general vicinity of the traffic stop and that Officer Summers could visually see him. (Tr. at 7) Detective Howe motioned for Officer Summers to have defendant Edmonson step out of the vehicle. (Tr. at 7) Detective Howe testified that based on Edmonson's suspicious behavior, he wanted Edmonson patted down for weapons. (Tr. at 46) Officer Summers had Edmonson step out of the vehicle and patted him down. (Tr. at 7, 47) Officer Summers conducted a computer check to see if Edmonson had any outstanding warrants (which he did not) and to confirm that his

---

[1]The actual ordinance provides:

... Each plate shall be securely fastened to the motor vehicle in a manner so that all parts thereof shall be plainly visible and reasonably clean so that the reflective qualities thereof are not impaired. License plates shall be fastened to all motor vehicles, except trucks and tractors licensed in excess of twelve thousand pounds (12,000 #) on the front and the rear of such vehicles not less than eight inches (8") nor more than forty-eight inches (48") above the ground, with the letters and numbers thereon right side up. ...

Code of Ordinances of the City of Independence, Missouri at § 18.29.002. (Tr. at 22-24)

[2]In the audio tape admitted as Defendant's Ex. 2, defendant Edmonson asserts that he has a front plate on the dash. Officer Summers testified that he did not see a license plate on the dashboard of the vehicle, but even if the plate was on the dash, that would have been an improper display of the license plate and a violation of the ordinance. (Tr. at 6, 30)

2

driver's license was valid (which it was). (Tr. at 7-8) Detective Howe immediately drove over to where Officer Summers had stopped Edmonson. (Tr. at 46)

4. Detective Howe asked defendant Edmonson for verbal consent to search his vehicle for illegal items. (Tr. at 8, 47) Detective Howe testified that Edmonson gave verbal consent. (Tr. at 47) Officer Summers testified that he heard Edmonson give verbal consent to Detective Howe. (Tr. at 8) After Edmonson gave consent to search the vehicle, Officer Summers and Edmonson stepped away from the vehicle several feet and continued their conversation while Detective Howe began to search the vehicle. (Tr. at 8) Officer Summers was asking Edmonson why he had been in the parking lot, and who he was going to meet, after he stated that he was waiting for a female to meet him there. (Tr. at 9)

5. Detective Howe advised Officer Summers that he had found some ammunition inside the vehicle. (Tr. at 8) Officer Summers then asked defendant Edmonson if there were any firearms in the vehicle. (Tr. at 8) Edmonson stated that there was a firearm in a locked box behind the driver's seat of the vehicle. (Tr. at 8-9) Officer Summers relayed that information to Detective Howe. (Tr. at 9) Edmonson was not in custody at this point nor was he handcuffed. (Tr. at 9) Edmonson was standing freely speaking with Officer Summers. (Tr. at 9)

6. Detective Howe recovered the firearm. (Tr. at 9) Officer Summers continued his conversation with defendant Edmonson asking him about his criminal history and Edmonson indicated that he had served time for robbery. (Tr. at 9) Officer Summers relayed this information to Detective Howe and continued his computer inquiry to see if it showed Edmonson to be a convicted felon. (Tr. at 9) Officer Summers testified that sometimes it takes a little time to run a criminal background check on the computer. (Tr. at 9)

7. Detective Howe came over to where Officer Summers and defendant Edmonson were standing and placed Edmonson under arrest. (Tr. at 9-10)

8. Detective Howe questioned defendant Edmonson. (Tr. at 20) The interview was recorded. (Tr. at 20; Defendant's Ex. 2) The recording began at 5:12 p.m. (Defendant's Ex. 2) Detective Howe gave Edmonson his Miranda rights during the interview. (Tr. at 27; Defendant's Ex. 2) During the interview, the officers told defendant Edmonson that it appeared as if he were "casing" the gas station and that they could make "a hell of a case" against him with the gun in the vehicle and his past conviction for robbery. (Tr. at 28-29; Defendant's Ex. 2)

9. Officer Summers issued defendant Edmonson a traffic ticket for improper vehicle license display (no front tag on vehicle). (Tr. at 10-11; Government's Ex. 1)

### III. DISCUSSION

Defendant Edmonson seeks to suppress "all evidence obtained during the execution of a car check and arrest of Mr. Edmonson conducted on February 2, 2008." (Motion to Suppress Evidence at 1) In addition, defendant seeks the suppression of "any statements made as a result of the unconstitutional stop and arrest of Mr. Edmonson." (Id.) In support of his motion, defendant argues

3

the initial stop of the vehicle was unlawful because the stop, based on the alleged improper display of a license plate, was "nothing more than a ruse to justify a car stop that was based on a 'hunch' instead of reasonable suspicion." (Id. at 5)

The initial stop of defendant Edmonson's vehicle was lawful. As the Eighth Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of the vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). Prior to pulling the vehicle over, Officer Summers observed that the vehicle did not display a front license plate. (See Fact No. 2, supra) Officer Summers testified that this is a violation of Independence, Missouri Ordinance 18.29.002.[3] (Id.) This traffic violation provided probable cause to stop the vehicle.[4] The fact that Officer Summers

---

[3] Defendant argues that displaying a license plate in the front windshield is consistent with the mandates of Missouri law which require that a license plate be affixed to the front of a vehicle. (Motion to Suppress Evidence at 5) The state law with respect to the display of license plates provides:

> ... Each such plate shall be securely fastened to the motor vehicle or trailer in a manner so that all parts thereof shall be plainly visible and reasonably clean so that the reflective qualities thereof are not impaired. ... License plates shall be fastened to all motor vehicles except trucks, tractors, truck tractors or truck-tractors licensed in excess of twelve thousand pounds on the front and the rear of such vehicles not less than eight nor more than forty-eight inches above the ground, with the letters and numbers thereon right side up. ...

Mo. Rev. Stat. § 301.130.5. There does not appear to be any significant difference between the state law and the Independence, Missouri ordinance.

[4] "Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.' ... United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005)(noting that '[t]he determinative question is not whether [the defendant] actually violated the Motor Vehicle Code ... but whether an objectively reasonable police officer could have formed a reasonable suspicion that [the defendant] was committing a code violation')." United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007). The Court has no reason to doubt that Officer Summers was correct in his assessment that the front license plate, if it was on the dash, was improperly displayed and, therefore, a violation of Ordinance 18.29.002. However, even if Officer Summers was mistaken, given the wording of the ordinance, i.e. that the plate be securely fastened on the front of the vehicle and that it be plainly visible with the reflective qualities not impaired, the Court finds Officer Summers' mistake to be objectively reasonable.

4

might also have suspected that defendant Edmonson was engaged in illegal conduct given his suspicious activities at the gas station does not invalidate the traffic stop. In United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991), the Eighth Circuit Court of Appeals found:

> In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

Id. at 501. See also United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop"); United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006)(officer had probable cause to conduct traffic stop when he observed minor traffic violation, even if traffic stop was pretext for other investigation).

After he was stopped, defendant Edmonson consented to a search of his vehicle.[5] A search that is conducted pursuant to a valid consent does not violate the Constitution. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Ramey, 711 F.2d 104, 107 (8th Cir. 1983); United States v. Matthews, 603 F.2d 48, 51 (8th Cir. 1979), cert. denied, 444 U.S. 1019 (1980). The test in reviewing a consent search is whether, in the totality of the circumstances, the consent was given voluntarily and without coercion. See United States v. Palacios-Suarez, 149 F.3d 770, 772 (8th Cir. 1998); United States v. Turpin, 707 F.2d 332, 334 (8th Cir. 1983). In United States v. Sanchez, 156 F.3d 875 (8th Cir. 1998), the Eighth Circuit Court of Appeals set forth the following with respect to the relevant circumstances:

> Whether consent is voluntary depends upon the "totality of the circumstances."

---

[5] In defendant's supplemental suggestions, defendant claims that his detention lasted longer than necessary to effectuate the purpose of the stop. (Suggestions in Support of Defendant's Motion to Suppress Evidence at 6) However, the evidence before the Court is that Detective Howe arrived almost immediately after defendant was stopped and asked defendant for consent to search the vehicle. (See Fact Nos. 3 and 4, supra) Defendant further claims in his supplemental suggestions that he did not consent to the search of his vehicle. (Suggestions in Support of Defendant's Motion to Suppress Evidence at 6) Again, the evidence before the Court does not support defendant's claim. (See Fact No. 4, supra)

5

> When evaluating such circumstances, we pay particular attention to the characteristics of the person giving consent and to the encounter from which the consent arose. Relevant characteristics of the consenting party include age, intelligence and education; chemical intoxication (if any); whether the individual was informed of the right to withhold consent; and whether the suspect generally understood the rights enjoyed by those under criminal investigation. To assess the environment surrounding the consent, we consider the length of time that the suspect was detained and questioned; whether the police intimidated the suspect; whether the suspect relied upon promises or misrepresentations made by the police; whether the suspect was in custody when the consent was given; whether the encounter occurred in a public or secluded place; and whether or not the suspect objected to the search.

Id. at 878 (citations omitted).

Detective Howe testified that defendant Edmonson gave him verbal consent to search the vehicle. (See Fact No. 4, supra) Officer Summers testified that he heard Edmonson give verbal consent to Detective Howe. (Id.) Very little time elapsed between Officer Summers stopping Edmonson and Edmonson giving consent to search to Detective Howe.[6] Edmonson was not in custody nor was he handcuffed when he consented to the search. (See Fact No. 5, supra) The encounter did not occur in a secluded place. No evidence was presented to suggest that the officers physically threatened or intimidated Edmonson in order to obtain his consent. Finally, Edmonson, who was 30 years old,[7] was not unfamiliar with the legal system as evidenced by his past conviction for robbery. (See Fact No. 6, supra) The Government met its burden in establishing that defendant Edmonson's consent to search was freely and voluntarily given and not the result of duress or coercion.

After defendant Edmonson consented to the search, Detective Howe found ammunition in the vehicle. (See Fact No. 5, supra) When asked if there if there were any firearms in the vehicle, Edmonson stated that there was a firearm in a locked box behind the driver's seat of the vehicle. (Id.) Detective Howe recovered the firearm and Officer Summers discovered that Edmonson had

---

[6] At approximately 5:00 p.m., Detective Howe contacted Officer Summers and requested that Officer Summers respond to 39th Street and Crackerneck and contact the subject in the vehicle regarding his suspicious behavior. (See Fact No. 1, supra) By 5:12 p.m., the stop, consent to search, search, recovery of the firearm and arrest of defendant Edmonson had already occurred. (See Fact No. 8, supra)

[7] The indictment gives defendant's date of birth as April 26, 1977.

6

a felony conviction. (See Fact No. 6, supra) Edmonson was then placed under arrest. (See Fact No. 7, supra) No constitutional violation took place.

Defendant's final argument, that statements made as the result of the unlawful stop and arrest are fruits of the poisonous tree and must, therefore, be suppressed, also fails. As set forth above, contrary to defendant's argument, the initial stop of the vehicle and the search pursuant to defendant Edmonson's consent were proper. Therefore, any statement made by defendant could not be considered a fruit of the poisonous tree.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Edmonson's Motion to Suppress Evidence (doc #21).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                                      */s/ Sarah W. Hays*
                                                                     SARAH W. HAYS
                                    UNITED STATES MAGISTRATE JUDGE